UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICIA F.,

                    Plaintiff,

          v.

ANDREW M. SAUL,
Commissioner of Social Security,

                    Defendant.

CASE NO. C19-5590-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

the Social Security Administration (Commissioner). The Commissioner denied plaintiff's

application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law

Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all

memoranda of record, this matter is REMANDED for further administrative proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1967.[1] She completed college and obtained a Master's

Degree, and previously worked as a social worker in the army. (AR 23, 46-53, 243, 469.)

Plaintiff protectively filed a DIB application in March 2018, alleging disability beginning

September 30, 2015. (AR 224.) The application was denied initially and on reconsideration. On

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

January 31, 2019, ALJ Allen Erickson held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 37-108.) On February 14, 2019, the ALJ issued a decision finding plaintiff not disabled. (AR 15-24.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 24, 2019 (AR 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed the final decision to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether a claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found post-traumatic stress disorder (PTSD), depression, and anxiety severe. He found physical impairments non-severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels, but with nonexertional limitations. Plaintiff can understand, remember, and apply detailed, but not complex, instructions while performing only predictable tasks, not in a fast-paced, production type environment; have exposure to only

occasional, routine workplace changes; and have only occasional interaction with the general public and co-workers. With that assessment, the ALJ found plaintiff unable to perform past work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a production line solderer, electrical accessories assembler, and marker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to properly evaluate medical evidence, her testimony, the RFC, and step five. She requests remand for benefits or, alternatively, further proceedings. The Commissioner argues the ALJ's decision should be affirmed.

<u>Medical Opinions and Evidence</u>

Because plaintiff filed her claim after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence. Under the regulations, an ALJ "will not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]"  20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2]  The ALJ must articulate and explain the persuasiveness of an opinion or prior finding based on "supportability" and "consistency," the two most important factors in the evaluation.  *Id*. at (a), (b)(1)-(2).  The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding.  *Id*. at (c)(1)-(2).  The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements.  *Id*. at (b)(2), (c)(3)-(5).  *But see id*. at (b)(3) (where finding two or more opinions/findings about same issue equally supported and consistent with the record, but not exactly the same, ALJ will articulate how other factors were considered).  Where a single medical source provides multiple opinions or findings, the ALJ conducts a single analysis and need not articulate how each opinion or finding is considered individually.  *Id*. at (b)(1).

The regulations applicable to cases filed before March 27, 2017 employ a hierarchy of opinion evidence consistent with Ninth Circuit case law wherein, as a general matter, more weight should be given to the opinion of a treating doctor than to an examining doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor.  *See Lester v. Chater*, 81

---

[2] "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . .  in [a] claim based on their review of the evidence in your case record[.]"  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

F.3d 821, 830 (9th Cir. 1996), and 20 C.F.R. §§ 404.1527, 416.927. The hierarchy affords the opinion of a treating doctor greater weight because the doctor is "'employed to cure'" and has "'greater opportunity to observe and know'" a patient and, in the Ninth Circuit, underlies the requirement to provide clear and convincing reasons to reject an uncontradicted doctor's opinion and specific and legitimate reasons where the record contains a contradictory opinion. *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1983) (agreeing with hierarchy and concluding: "If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.") (quoted source omitted); *see also Magallanes*, 881 F.2d at 750 (noting same rationale for the greater weight afforded to treating doctor's opinions and setting forth rules for both uncontroverted and controverted medical opinions).

Plaintiff denies the Commissioner has authority to overturn this well-established legal precedent. Plaintiff observes that the revised rules retain a claimant's relationship with a medical source as a factor considered in evaluating persuasiveness, and allow an ALJ to find a treating source opinion the "most persuasive . . . if it is both supported by relevant objective medical evidence and the source's explanation, and is consistent with other evidence[.]" Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules), 82 Fed. Reg. 5844, at 5853 (Jan. 18, 2017). Plaintiff asserts the new rules thus do not negate the need for an ALJ to provide at least specific and legitimate reasons, supported by substantial evidence, to reject a contradicted opinion from a treating or examining doctor, and that the reasoning set forth in *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987), remains applicable:

> "[W]hen the conflict is between the opinions of a treating physician and an examining physician it is the rule in this circuit that 'if the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for

doing so that are based on substantial evidence in the record.' The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual."

*Id.* (quoting *Murray*, 722 F.2d at 502).

Pursuant to 42 U.S.C. § 405(a), the Commissioner has "full power and authority to make rules and regulations and to establish procedures" deemed "necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." This "'exceptionally broad authority'" has long been recognized by courts. *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) (quoting *Heckler v. Campbell*, 461 U.S. 458, 466 (1983) (quoted source omitted)). Judicial review of regulations promulgated pursuant to § 405(a) is therefore narrowly "'limited to determining whether the regulations promulgated exceeded the [Commissioner's] statutory authority and whether they are arbitrary and capricious.'" *Id.* (quoting *Heckler*, 461 U.S. at 466). As the Supreme Court held in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984), where a statute is silent or ambiguous as to a specific issue, an agency's "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."

This *Chevron* deference applies to revisions to agency regulations. "For if the agency adequately explains the reasons for a reversal of policy, 'change is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency.'" *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005) (adding that "in *Chevron* itself, this Court deferred to an agency interpretation

that was a recent reversal of agency policy.") (quoted and cited sources omitted).  Courts must defer to a new regulation, even where it conflicts with prior judicial precedent, unless the Court finds the prior judicial construction "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id*. at 982-83.  *See, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'"; upholding as valid and binding Commissioner's previous regulations about the weight given to medical opinions despite difference from Circuit Court's version of the rule).[3]

Plaintiff does not present and the Court does not find any support for a contention the Commissioner lacked authority to makes changes to the rules governing how an ALJ considers and articulates the consideration of medical opinions and prior administrative medical findings.[4] Nor does plaintiff attempt to depict the new regulations as arbitrary and capricious or manifestly contrary to the relevant statutory provisions.

Any suggestion the new regulations apply a hierarchy of medical opinions lacks merit. Plaintiff contends comments to the proposed regulation change state that the new rules "do not create an *automatic* hierarchy for treating sources, examining sources then nonexamining to

---

[3] In explaining the revisions, the Social Security Administration (SSA) indicated it expected court deference to the regulations, which were "adopted through notice and comment rulemaking procedures pursuant to the Commissioner's exceptionally broad rulemaking authority under the Act." 82 Fed. Reg. at 5860.  The SSA further explained:  "The rules are essential for our administration of a massive and complex nationwide disability program where the need for efficiency is self-evident. The rules are neither arbitrary nor capricious, nor do they exceed the bounds of reasonableness. Under these circumstances, we are confident that our rules are valid." *Id*.

[4] The only example of statutory authority plaintiff points to as underlying the above-described Ninth Circuit precedent is the Administrative Procedure Act.  *See* 5 U.S.C. § 557(c)(A) ("The record shall show the ruling on each finding, conclusion, or exception presented.  All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of – (A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record . . . ").

ORDER
PAGE - 7

which" an ALJ must "mechanically adhere." 82 Fed. Reg. at 5853 (emphasis added). In fact, this statement relates to the prior regulations. *See id.*; *see also id.* at 5844 (explaining that "the regulation sections in effect on the date of publication" are referred to as the 'current' regulation sections.") Under the prior regulations, an ALJ could, for example, assign the opinion of a treating source little weight upon finding it not well-supported or inconsistent with other evidence, while assigning great weight to a supported and consistent opinion of an examining or nonexamining source. *Id.* The revisions to the rules "help eliminate confusion about a hierarchy of medical sources and instead focus adjudication more on the persuasiveness of the content of the evidence." *Id.* at 5853. *See also id.* at 5844 (stating the rule revisions both emphasize the absence of any "inherent persuasiveness" in opinions offered by State agency doctors and consultative examiners or a claimant's own medical sources, and highlight the continuing consideration of a medical source's longstanding treatment relationship with a claimant).

It remains to be seen whether the Ninth Circuit would continue to require, in the absence of a hierarchy, that an ALJ provide "clear and convincing" or "specific and legitimate reasons" in the analysis of medical opinions, or some variation of those standards. As reflected above, the Ninth Circuit linked the need for such reasons to the rationale underlying the hierarchy. It is not, in any event, clear the Court's consideration of the adequacy of an ALJ's reasoning under the new regulations would differ in any significant respect. The new regulations require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b). At the least, this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial

evidence. *See* 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision. . . . [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us.") With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A.    Penny Tanner, Ph.D., ARNP

Penny Tanner, Ph.D., ARNP, first completed a Mental Impairment Questionnaire for plaintiff in April 2018. (AR 464-65.) Dr. Tanner noted she had treated plaintiff since March 2012, identified PTSD as the diagnosis, checked numerous boxes of signs and symptoms, and remarked: "Very sensitive to grief & loss in self & in others." (AR 464.)  As described by the ALJ, the "panoply of symptoms" identified "include memory impairment; oddities of thought; disturbances in appetite, perception, sleep, and mood; motor tension; irrational fears and sleep disturbances, and mood disturbances." (AR 22.) Dr. Tanner described clinical findings demonstrating the severity of impairment and symptoms, including results of mental status examination (MSE), as: "Flattened affect, anxious & depressed mood, obsessive at times." (AR 465.) In addition to one slight and a number of moderate functional limitations, Dr. Tanner opined plaintiff was markedly limited in maintaining attention and concentration for extended periods, working in coordination or proximity to others without being distracted, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers without distracting them or exhibiting extreme behaviors. (AR 465.) She further opined plaintiff would be absent from work more than three times a month and was not

capable of performing a full-time job, working eight hours a day, five days a week. (*Id.*)

Dr. Tanner completed a second questionnaire in November 2018. (AR 571-72.) She identified diagnoses of dysthymia and PTSD, checked numerous boxes of signs and symptoms, and cited to her progress notes "for MSE" as reflecting clinical findings. (AR 572.) In addition to a number of slight and moderate limitations, Dr. Tanner assessed marked limitation in the same categories previously identified, as well as in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness/cleanliness. (*Id.*) She opined plaintiff would be absent about three days a month and would not be able to perform full-time work.

The ALJ found Dr. Tanner's opinions "not persuasive, as they are unsupported by both Ms. Tanner's own notes and the record overall." (AR 22.) The ALJ found the opinions inconsistent with plaintiff's testimony and reporting about her activities, which included spending time with two close friends, taking care of her mother, shopping in stores two-to-three times a week, occasionally attending movies and going to coffee shops, the ability to drive, and enjoying gardening, painting, wood carving, and other forms of art. The ALJ, finally, noted inconsistency with the opinions of State agency doctors Eugene Kester, M.D., and Matthew Comrie, Psy.D.

Plaintiff asserts Dr. Tanner's treatment notes support her opinions in including observations of her anxious, frustrated, depressed, sad, and/or angry mood, obsessive/compulsive thought content, constricted and/or labile affect, and feeling overwhelmed. (AR 326, 329-32, 335-45, 539-42, 544, 564.) She notes the ALJ's failure to identify any contradictory treatment notes or to explain the perceived contradiction with the overall record. Plaintiff denies any of the activities cited contradict Dr. Tanner's opinions and rejects the ALJ's reliance on the opinions of Drs. Kester and Comrie, asserting their opinions lack supportability because they did not review any evidence beyond July 2018. She also argues that, because neither Dr. Kester, nor Dr. Comrie

met or examined her, while Dr. Tanner provided treatment, the inconsistency of the opinions of the State agency doctors was a valid reason to give less, not more weight to their unsupported opinions. Plaintiff, finally, notes the ALJ referred to Dr. Tanner only as a nurse practitioner and asserts her opinions are entitled to greater weight because she is a specialist in psychology.

The ALJ here properly relied upon supportability and consistency in considering the opinions of Dr. Tanner. He was not required to explain how he considered Dr. Tanner's treatment relationship, the absence of treatment or examination by Drs. Kester and Comrie, the specialization of Dr. Tanner and Dr. Comrie as psychologists, or the State agency doctors' familiarity with other evidence in the claim file and expertise in relation to disability claims. The opinions of the State agency doctors do not lack supportability merely because they could not have reviewed medical records post-dating their opinions. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision."; noting the absence of any limit in the regulations on how much time may pass and that: "Only where 'additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.'") (citation omitted). Also, because Dr. Tanner qualifies as an "acceptable medical source" as either an ARNP or a psychologist, 20 C.F.R. § 404.1520(a)(2), (7), any error in the ALJ's failure to identify both of her titles was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (citations omitted).

An ALJ may reject a medical opinion due to inconsistency with the medical record,

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), other opinions, *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 603 (9th Cir. 1999); 20 C.F.R. § 404.1520c(c)(2), and/or a claimant's level of activity, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ is responsible for resolving conflicts in the medical record, *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008), and when evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan*, 169 F.3d at 599.

The ALJ's finding of inconsistency is supported by substantial evidence. Plaintiff offers an alternative interpretation of the medical record and her activities, but the ALJ's interpretation is at least equally rational. The ALJ, for example, reasonably found inconsistency between Dr. Tanner's opinions of marked impairment in every aspect of social interactions with or around others given the contrary evidence of plaintiff's social activities.

The ALJ's finding of an absence of support in Dr. Tanner's own notes and the record overall would have benefited from further explanation. The Court does not, however, find the absence of a more detailed discussion to reflect harmful error or to undermine the substantial evidence support for the conclusion reached. For example, Dr. Tanner's treatment notes, while often noting mood, affect, and obsessive/compulsive thought content as described by plaintiff, also consistently observe plaintiff's intact cognition, goal-directed thought process, and speech and appearance within normal limits on MSE. (AR 326-48, 539-50, 552-66.) The ALJ rationally construed Dr. Tanner's treatment notes as failing to support her opinions.

The ALJ likewise rationally construed the medical record. While finding evidence of conservative treatment, generally stable conditions, and improvement with and effectiveness of

treatment, the ALJ's discussion of the medical record acknowledges the severity of plaintiff's impairments. (*See* AR 21.) The RFC accounts for the evidence and, in large part, the opinions of Dr. Tanner. The ALJ, for example, accounted for limitations in maintaining attention and concentration for extended periods by limiting plaintiff to detailed, but not complex instructions, while performing only predictable tasks, and not in a fast-paced production type environment. He accounted for limitations in plaintiff's ability to interact with others by limiting her to only occasional interaction with the general public and co-workers. Also, while Dr. Tanner found only moderate limitation in the ability to respond appropriately to changes in the work setting, the ALJ limited plaintiff to only occasional, routine workplace changes. In other words, while not finding plaintiff as limited as opined by Dr. Tanner, and while rejecting conclusions as to attendance and performing full-time work, the ALJ's analysis of this medical opinion, the medical record as a whole, and the conclusions as steps four and five have the support of substantial evidence.

The Court, in sum, concludes the ALJ's findings of inconsistency and a lack of support are valid and supported by substantial evidence. This matter is, however, subject to remand for other reasons. On remand, the ALJ should take the opportunity to properly identify Dr. Tanner's titles and, if appropriate following further consideration of the record, to provide additional explanation for a finding of inconsistency with Dr. Tanner's treatment notes and the medical record as a whole.

B.    Christina Rasmussen, Ph.D.

Dr. Christina Rasmussen conducted a memory assessment of plaintiff in May 2018. (AR 467-72.) Plaintiff was "observed to be able to follow one and two step instructions" on examination, but her "ability to follow complex instructions at this time is unknown." (AR 471.) Plaintiff's memory test results indicated memory abilities in the range from borderline to low average with relative weaknesses in visual and delayed memory abilities, and her "memory ability

has likely been impacted by her emotional distress." (*Id.*) Plaintiff reported being anxious throughout the testing "which can impact her performance on the test." (*Id.*) The ALJ found this evidence not persuasive because it lacked an indication of how plaintiff's alleged memory impairments are likely to affect her ability to engage in work-related activities. (AR 22.)

Plaintiff argues the ALJ's analysis is not fully accurate because the ALJ failed to adequately explain why he did not find her limited to one-and-two step instructions. She deems Dr. Rasmussen's findings and opinion regarding impaired memory not meaningfully inconsistent with Dr. Tanner's opinions.

Plaintiff does not identify error. Under the regulations applicable to plaintiff's claim, a "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in various abilities, including the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" 20 C.F.R. § 404.1513(a)(2). Statements from a medical source "including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis[,]" is "[o]ther medical evidence" and is "not objective medical evidence or a medical opinion. *Id*. at (a)(3).[5]

Dr. Rasmussen noted plaintiff's ability to follow one-and-two step instructions during the examination and the absence of a finding on examination as to her ability to follow complex

---

[5] For claims filed prior to March 27, 2017, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a).

instructions, but did not translate those or any other findings into a medical opinion of plaintiff's ability to perform the mental demands of work activities. The ALJ reasonably found this evidence not persuasive in failing to indicate how the alleged memory impairments are likely to impact the ability to engage in work-like activities. *See, e.g.*, *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.")

The ALJ, in any event, accounted for the evidence from Dr. Rasmussen in adopting RFC limitations not identical to, but consistent with her findings on examination, including limiting plaintiff to applying detailed, but not complex instructions, while performing predictable tasks, not in a fast-paced, production type environment. *See id.* (ALJ need not provide reason for rejecting opinions where opinions incorporated into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician), and *Rounds v. Comm'r*, *SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (ALJ bears responsibility for "translating and incorporating clinical findings into a succinct RFC.") *See also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (RFC finding need not directly correspond to a specific medical opinion). Nonetheless, because this matter is subject to remand for other reasons, the ALJ should take the opportunity to address how the evidence from Dr. Rasmussen is or is not accounted for in the RFC.

C.    Other Medical Evidence

Plaintiff points to several different records including diagnoses, examination findings, and observations as providing further support for the opinions of Dr. Tanner and for the existence of severe physical impairments. This portion of plaintiff's brief consists of a mere recitation of evidence and is insufficiently specific to allow for meaningful review as an individual assignment

of error. *See Carmickle*, 533 F.3d at 1161 n.2 (declining to address issues not argued with any specificity). The Court also disagrees with plaintiff's contention that the evidence cited undermines the substantial evidence support for the ALJ's consideration of the opinions of Dr. Tanner. The ALJ should, however, reconsider any evidence as it relates to the consideration of opinions and/or severity of plaintiff's physical impairments.

D.    Veterans Affairs (VA) Rating and Evidence

The record reflects that the VA rated plaintiff 100 percent disabled due to PTSD (70%) and a variety of physical impairments. (AR 435-46.) Plaintiff avers error in the ALJ's failure to acknowledge this evidence as providing further support for Dr. Tanner's opinions. She also asserts this evidence supports the existence of severe physical impairments and alleges error in the ALJ's failure to develop the record by obtaining the VA evaluations supporting the VA rating.

New regulations applicable to plaintiff's claim deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as a statement a claimant is disabled) "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 404.1520b (c). The ALJ "will not provide any analysis about how [the ALJ] considered such evidence in [the] determination or decision[.]" *Id.* The ALJ in this case did not err in relation to the VA rating.

Nor does plaintiff establish error in the development of the record. An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). That duty exists even when the claimant is represented by counsel, *id.*, and includes development of medical history for at least the twelve months preceding the date of the application for benefits, § 404.1512(b)(1). The ALJ is to "make every reasonable effort" to help a claimant get medical evidence, which entails making

an initial request and, if not received, "one follow-up request to obtain the medical evidence necessary to make a determination." *Id*. at (b)(1)(i). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). A claimant also bears an obligation to furnish medical and other evidence, a duty that is ongoing and applies at every level of administrative review, § 404.1512(a), while a claimant's attorney has an affirmative duty to act with "reasonable promptness to obtain the information and evidence" the claimant wants to submit and to act with "reasonable diligence and promptness" in providing "prompt and responsive answers to requests for information", § 416.16.1540(b)(1) and (b)(3)(ii).

Plaintiff does not suggest the ALJ failed to make the required record requests and there is no indication the ALJ found ambiguous evidence or that the record was inadequate to allow for a proper evaluation. Plaintiff's counsel had no objections to the record at hearing. (AR 43.) Plaintiff bears the ultimate burden to prove disability. § 404.1512(a). Her assertion of a failure to develop the record is wholly conclusory and insufficient to support error.

E.    Merry Alto, M.D., and Dennis Koukol, M.D.

State agency physician Merry Alto, M.D., reviewed plaintiff's medical records in June 2018 and opined plaintiff could perform medium-level work, with postural and manipulative limitations – including no lifting overhead with the left upper extremity, occasionally climbing ladders, ropes, and scaffolds, and frequently crouching and crawling – due to a combination of impingement and possible rotator cuff tendinitis. (AR 118-20.) In July 2018, Dennis Koukol, M.D., agreed with this assessment. (AR 134-35.)

The ALJ found the opinions of Drs. Alto and Koukol not persuasive. (AR 22.) While the medical record included conditions such as left shoulder degenerative joint disease and

hypertension, there was no evidence these or any other physical conditions prevented plaintiff from engaging in work activities. (*Id.* (citing AR 370, 393, 418).) The record showed plaintiff's limitations are mental, not physical. (*Id.* (citing "Hearing Testimony"; AR 416, 481, 487, 500, 526).) Earlier, at step two, the ALJ found plaintiff's physical impairments non-severe because they did not cause significant vocational limitations. (AR 17-18.) With respect to left shoulder degenerative joint disease, the ALJ noted a January 2018 x-ray showing mild acromial clavicular joint hypertrophic change and mild glenohumeral joint degenerative change. (AR 18 (citing AR 370).) Plaintiff had been taking over the counter medication, as well as undergoing physical therapy (PT) for this condition. The ALJ concluded: "Given her ongoing activities, which include yard work, driving, crafts, and household chores, this condition does not cause more than minimal limitations in basic work activities." (*Id.*)

Plaintiff asserts that, contrary to the ALJ's analysis, the record includes evidence showing her physical problems affect her ability to reach and lift. She points to a March 2018 treatment note from Jaime Foland, M.D., finding tenderness on palpation in examination of her left shoulder. (AR 351 (finding tenderness on palpation along left acromioclavicular joint, pain with passive external, but not internal rotation, and that plaintiff "appeared to have a positive impingement sign."; also finding some pain on forward flexion with hand pronated, not supinated, the ability to place her hand behind her back to the lower lumbar spine, some pain on resistive abduction, and "definite pain to palpation over the greater tubercle.")) Dr. Foland stated plaintiff "appears to have a combination of impingement, possible rotator cuff tendinitis." (*Id.*)

It can be reasonably inferred from the decision the ALJ based his finding that the opinions of Drs. Alto and Koukol were not persuasive on an absence of support and/or inconsistency with the record. However, the Court finds the explanation for the conclusion insufficient. The record

does not contain any contradictory medical opinions and the ALJ does not provide a sufficient description or discussion of the evidence supporting or, arguably, contradicting his conclusion. (*See, e.g.*, AR 350-51 (containing, in addition to examination findings, Dr. Foland's description of plaintiff's report as a renewal of prior joint pain that "used to go away in the past," but had been constant "for the last few months, possibly 6 months", had been "affecting her activities of daily living, especially with any type of abduction beyond 90 degrees", with pain "at times moderate-to-severe in severity"; Dr. Foland also reviewed January 2018 x-rays "in which there appears to be some hypertrophy of the left acromioclavicular joint and some mild glenohumeral joint degeneration", noted plaintiff had been undergoing PT, and gave an injection as recommended in PT).) Also, while citing to plaintiff's hearing testimony as showing her limitations are not physical, plaintiff, at hearing in January 2019, testified to experiencing sciatica, neck, and shoulder problems, that she had received PT, acupuncture, and shots in her shoulder, that she "just live[s] with the pain[,]" and that, due to these problems, she did not "lift anything over 10, 20 pounds." (AR 92-94.) Plaintiff also, in a March 2018 disability report, reported "constant pain in the shoulder, neck, spine, and sciatica." (AR 274, 277-78.) Finally, while finding inconsistency with her activities at step two, the ALJ did not mention this reasoning in assessing the opinions of Drs. Alto and Koukol.

The Court finds the above-described deficiencies to undermine the substantial evidence support for the ALJ's conclusion and remand necessary for further consideration of this opinion evidence. Further review of this opinion evidence may also implicate and require further consideration of plaintiff's physical impairments at step two.

F.    Drs. Kester and Comrie

Plaintiff also assigns error to the assessment of the opinions of Drs. Kester and Comrie.

Dr. Kester, in June 2018, assessed moderate limitations in concentrating, persisting, or maintaining pace, explaining plaintiff "may be distracted by the presence of others[,]" and will have intermittent disruptions of attention and concentration due to interference from her psychological symptoms, "but not so as to preclude productive activity in a competitive employment situation." (AR 121.)  He assessed moderate limitations in interacting intensively with the general public, but otherwise no significant limitations in social interactions.  Dr. Comrie, in July 2018, agreed with this assessment, but added that plaintiff retains the capacity to interact with others on an occasional/superficial basis and to accept instructions from a supervisor.  (AR 136-37.)

The ALJ described the opinions of Drs. Kester and Comrie relating to steps two and three of the sequential evaluation (*see* AR 116-17, 131-32), rather than in relation to step four (AR 120-22, 136-37).  That is, the ALJ described Dr. Kester's opinion that plaintiff had mild limitations in interacting with others and moderate limitations in concentrating, persisting or maintaining pace, and Dr. Comrie's opinion of moderate limitations in both respects.  (AR 21.)   The ALJ found these opinions somewhat persuasive, noting the record showed plaintiff suffered from symptoms of PTSD, depression, and anxiety, received conservative treatment in the form of medication, counseling, and support groups, and plaintiff's reporting of ongoing symptoms including panic attacks, low mood, and hypervigilance.  (AR 21-22 (citations omitted).)  The ALJ contrasted this evidence with plaintiff's testimony and reporting that she is able to engage in a wide range of activities and other evidence of her abilities and activities, as earlier described.

Plaintiff argues the ALJ erred in failing to state a legitimate reason for not including in the RFC a limitation to intermittent disruptions of attention and concentration due to interference from her psychological symptoms.  However, Drs. Kester and Comrie modified this limitation by clarifying it would not "preclude productive activity in a competitive employment situation."  (AR

121, 136.)  The ALJ further accounted for this opinion by adopting entirely consistent limitations in the RFC to detailed but not complex instructions, performing only predictable tasks, not in a fast-paced production type environment, as well as only occasional, routine workplace changes. *Turner*, 613 F.3d at 1223; *see also Rounds*, 807 F.3d at 1006, and *Chapo*, 682 F.3d at 1288.

In sum, and as a general matter, the ALJ properly considered supportability and consistency in finding the opinions of Drs. Kester and Comrie somewhat persuasive.  However, on remand, the ALJ should describe and assess the opinions of these doctors as they relate to the decision at step four.  He should also take the opportunity to directly address the assessed limitation in relation to attention and concentration.

## Symptom Testimony

The rejection of a claimant's symptom testimony requires the provision of specific, clear, and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834. [6]

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence of record. While plaintiff had PTSD, depression, and anxiety stemming from her military tours of duty, as well personal trauma, her treatment had been conservative, consisting of medication, counseling, and support groups.  (AR 21.)  Treatment notes showed her conditions are generally stable and that she is an active person, who helped care for her ailing mother, performs household chores,

---

[6] Effective March 28, 2016, the SSA eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character.  SSR 16-3p.  The Court continues to cite to relevant case law utilizing the term credibility.

and does activities with friends, wood carving, and other forms of artwork.  "Overall, her pattern of treatment and clinical signs do not support limitations exceeding those in the [RFC]."  (*Id*.)

The ALJ acknowledged medical evidence favorable to plaintiff's claim, including positive tests for depression on several occasions, her use of antidepressant medication, and, in September 2018, a diagnostic study with scores in the moderately severe category of depression.  (*Id*. (citations omitted).)  Plaintiff reported she forgets names, has nightmares, and has difficulty concentrating, schedules appointments in the morning to avoid people, tried to shop with no crowds, and reported panic attacks, hypervigilance, isolation, and occasionally seeing dark peripheral shadows and hearing names called.  (*Id*. (citations omitted).)  The ALJ pointed to a September 2018 report plaintiff's motivation and energy had improved since a recent medication change, that her medications had been effective in managing her symptoms, and showing unimpaired cognitive functions, including memory and concentration, on examination.  (*Id*. (citations omitted).)  The ALJ also reflected plaintiff's testimony and reports of engaging in a wide range of activities, including spending time with two close friends, taking care of her mother, shopping in stores two-to-three times a week, and occasionally attending movies and going to coffee shops.  (*Id*. (citations omitted).)  Plaintiff is able to drive and enjoys gardening, painting, wood carving, and other forms of art.  The ALJ concluded that, while the record as a whole supports plaintiff's assertions of severe mental health symptoms, it does not support the degree of severity alleged or the lack of any job plaintiff could perform.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins*, 261 F.3d at 857; Social Security Ruling (SSR) 16-3p.  An ALJ therefore properly considers whether the medical

evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. § 404.1529(c)(4). An ALJ may reject symptom testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ also properly considers evidence associated with treatment, § 404.1529(c)(3), SSR 16-3p, including favorable response to conservative treatment, *Tommasetti*, 533 F.3d at 1039-40; *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan*, 169 F.3d at 599-60.

The ALJ rationally construed the evidence of plaintiff's activities and abilities as inconsistent with the alleged degree of impairment. The ALJ also, as a general matter, rationally construed the medical evidence of record. Plaintiff states there is no evidence of some additional curative treatment available to her and that a general stability of conditions is not a convincing reason to reject her testimony. Yet, the ALJ did not consider these factors in isolation. The decision reflects plaintiff's engagement in treatment typical for her mental health impairments, her ability to maintain and engage in that treatment, including participation in multiple groups, and evidence that engagement had resulted in improvement and general stability. The ALJ did not find plaintiff's symptoms had ceased. He acknowledged the severity of her symptoms, while disagreeing with her contention of the extent they impacted her functioning and prevented her from engaging in any type of employment. The ALJ also fashioned a restrictive RFC.

However, the ALJ's errors in assessing medical opinion evidence implicate and necessitate further consideration of the symptom testimony on remand. Also, should the ALJ again find plaintiff's mental health treatment conservative and the record to reflect stability and improvement, he should provide further explanation and support for those conclusions.

/ / /

<u>RFC and Step Five</u>

The ALJ's errors likewise implicate and necessitate further consideration of plaintiff's RFC at step four and conclusion at step five. The ALJ should reconsider both steps on remand.

<u>Remand</u>

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). *Accord Leon v. Berryhill*, 880 F.3d 1044 (9th Cir. 2017).

To remand for an award of benefits, the Court must find: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) that the record has been fully developed and further administrative proceedings would serve no useful purpose, including consideration of any outstanding issues that must be resolved before a disability determination can be made; and (3) that, if improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Brown-Hunter*, 806 F.3d at 495; *Treichler*, 775 F.3d at 1105; and *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). *But see* Revisions to Rules, 82 Fed. Reg. 5844 at 5858-60 (explaining "it is never appropriate under our rules to 'credit-as-true' any medical opinion" and describing a "credit-as-true rule" as inconsistent with the general rule that, when a court finds an error, "the proper course of action in all but rare instances is to remand the case to the agency for further proceedings.") Also, even with satisfaction of the three requirements, the Court retains flexibility in  determining the proper remedy and may remand for further proceedings where, considering the record as a whole, serious doubt remains as to whether a claimant is, in fact, disabled. *Brown-Hunter*, 806 F.3d at 495. *See also Strauss v. Comm'r of*

*Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.")  If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings.  *Treichler*, 775 F.3d at 1105.

The Court here finds the record uncertain and ambiguous and containing outstanding issues that must be resolved before a disability determination can be made, and concludes further administrative proceedings would serve a useful purpose.  This matter must be remanded for further administrative proceedings.

## **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further proceedings.

DATED this <u>9th</u> day of April, 2020.

Mary Alice Theiler
United States Magistrate Judge